# UNITED STATES DISTRICT COURT
for the
. District of Arizona

| | |
|---|---|
| United States of America<br><br>v.<br><br>Cody Oscar Johnson | No. 23-4312 MJ CDB<br><br>CRIMINAL COMPLAINT |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

**Count 1**:   Between on or about November 16, 2023, and on or about November 17, 2023, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendant, CODY OSCAR JOHNSON, did knowingly engage in and attempt to engage in a sexual act with the victim, S.W., an Indian, by using force against her. The sexual act involved contact between the defendant's penis and the victim's vulva, upon penetration, however slight, in violation of Title 18, United States Code, Sections 1152, 2241(a)(1), and 2246(2).

**Count 2**:   Between on or about November 16, 2023, and on or about November 17, 2023, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendant, CODY OSCAR JOHNSON, did knowingly engage in and attempt to engage in a sexual act with the victim, S.W., an Indian, by using force against her. The sexual act involved contact between the defendant's penis and the victim's anus, upon penetration, however slight, in violation of Title 18, United States Code, Sections 1152, 2241(a)(1), and 2246(2).

**Count 3**:   On or about November 21, 2023, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendant, CODY OSCAR JOHNSON, an Indian, did unlawfully seize, confine, and kidnap the victim, M.J., and hold the victim for any purpose, in violation of Title 18, United States Code, Sections 1153 and 1201(a).

**CC:  USM & PTS**

I further state that I am a Special Agent from the Federal Bureau of Investigation and that this complaint is based on the following facts:

**See Attached Affidavit Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof: ☒Yes ☐ No

AUTHORIZED BY: W. Vinnie Lichvar, AUSA

_WL_

_Signature of Complainant_

Loren Moneypenny, Special Agent - FBI
Printed Name and title

Telephonically sworn.

Camille D Bibles
Digitally signed by Camille D Bibles
Date: 2023.11.22 19:45:56 -07'00'

Date: November 22, 2023

Judge's Signature

City and State: Flagstaff, Arizona

Hon. Camille D. Bibles, U.S. Magistrate Judge
Printed name and title

**STATEMENT OF PROBABLE CAUSE**

I, Loren Moneypenny, a Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby depose and state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since September of 2018. I am currently assigned to the Gallup, New Mexico, Resident Agency of the Phoenix, Arizona, FBI Field Division. I have received training at the Federal Bureau of Investigation Training Academy in Quantico, Virginia as well as training in the investigation of assault, murder, and other violent crimes.

2. In the course of my official duties, I am charged with the investigation of crimes occurring on (among other places) the Navajo Nation Indian Reservation within the Federal District of Arizona. I am an investigative law enforcement officer of the United States, and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 of the United States Code.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

4. On November 17, 2023, a Window Rock Police Officer was called to the emergency room at Tsehootsooi Indian Medical Center in Fort Defiance, Arizona regarding a suspected sexual assault. When the officer arrived at the emergency room, he

1

met with S.W., who is seventeen years old and in the twelfth grade at a high school in Navajo, New Mexico. S.W. is a member of the Navajo Nation Indian Tribe.

5.      S.W. told the officer that she was raped by her auntie's husband, Cody Johnson (JOHNSON). Her auntie is M.J. The officer asked S.W. to provide a written statement regarding what had occurred. The following details a summary of that written statement:

> JOHNSON arrived at his house at around 10:30 p.m. S.W. was sitting on the couch watching a movie. JOHNSON appeared to have been drinking alcohol because he was "stumbling." JOHNSON asked her if she wanted to go for a ride and she agreed. JOHNSON and S.W. then drove around. They smoked weed and drank alcohol in the vehicle. When they arrived back at the house, they sat on the couch and began looking for a movie to watch. JOHNSON began complimenting S.W., telling her that she was "pretty, cute, and hot." When JOHNSON moved closer to S.W., she told him to go back, but he did not listen. JOHNSON began nibbling on her shoulder. S.W. tried to look away and would not let him bring his face to hers. This went on for approximately 20 minutes. JOHNSON then put his body on top of hers. S.W. pushed him off, but "was instantly back in his grasp." He continued kissing her neck and giving her hickeys. This lasted for approximately 10 minutes. JOHNSON took off his shirt. S.W. described freaking out and being scared, because she had heard that JOHNSON was strong, that he had been in the military, and that he had guns. JOHNSON then picked her up and carried her towards his bedroom. She tried to get out of his grasp and got her feet onto the ground. JOHNSON picked her up again and forcibly kept her in his grasp as he took her to his room. In his room, JOHNSON put her on the bed. He then took off his pants and shorts. He tried to lower S.W. so that he could put his penis inside of her, but she "wrestled" him. They continued to wrestle, and JOHNSON grabbed her by the neck and squeezed. S.W. "freaked" and got his hand off of her neck. They both gasped for air. JOHNSON then got up and turned the lights off. She stated that "he gave [her] another round of wrestling." This time, he pulled her hair and tried to take her to the floor. She did not feel pain when her hair was pulled and told him: "Do you really think just because your [sic] pulling my hair I'm not going to fight?" She stated that she "confidently" grabbed his right forearm and pulled herself up from the ground. They then began "wrestling" again. S.W. was afraid to hit him because she did not want to get hit. JOHNSON hit her with "light punches." She was about to cry and began praying. He hit her legs and started to lick

her "private part." He then put his penis inside of her. She started to cry. She felt sober at this point but let him thrust inside of her until he put his penis into her rectum. It hurt and she groaned in pain. As he was thrusting, she put her hand against his stomach, which stopped him. He then held her down by the neck, but she pushed him off. He pulled her towards him and tried to put his penis back into her rectum, but she would not let him. He squeezed her neck again. She tried to tell him that it hurt and that she was in pain, but he kept his hands on her neck until she pushed them away. She told him stop, but he would not listen. He kissed her lower parts and licked her. He put his penis back into her vagina. She put her hand onto his stomach to stop him because she had to pee. She told him: "I need to go pee, that I'm about to piss on myself." JOHNSON told her "no" and that he wanted to keep going. He kept going for around 5-10 minutes until he finally stopped. He then got up and turned the lights on. She went to the restroom and stayed there for approximately 10 minutes until he hit the door. She went back to the couch to find her phone. He came out and asked her why she did not want to go back to the room. She told him that she was tired and wanted to stop. He stated that he wanted to go another round, "whether it's in or eating [her]." She said no, and that they had done enough. She said she was too tired. He told her that he would hit her if she did not cooperate. He told her that she could pick what he did to her, or he would hit her. She told him that he could not put it back in her, and that she'd rather have him "eat [her] out." JOHNSON then kissed and licked her for approximately 10 minutes. He asked if he could put his penis in her. She said "no." He continued to beg her. She started crying and told him to stop. He did not listen. He got mad and in her face. S.W. brought up his marriage and he stopped. He went to another room for approximately 15 minutes. He then came back and apologized. She told him that she was not forgiving him. He told her that he might have "cummed inside of [her]." She was shocked and asked him why he would do that. He told her that he loved her and that she was a "package deal." She told him that she was tired and that she was going to the room that her cousin was sleeping in. She did not believe he would do anything to her if she went into that bed. She then went to that bed and fell asleep.

6. Medical records from the emergency room indicate that S.W. reported that she was sexually assaulted by her uncle. She told medical providers that he forced himself on her. She stated that he tried to choke her three times and she was able to move his hands away. She stated that he hit her with his fist on her left upper leg and that he held her right wrist. She stated that there was vaginal and rectal penetration with his penis—no condom

3

was used. She stated that her uncle told her that he ejaculated inside of her. She denied that he used his hands or fingers to violate her. She denied that he forced oral sex on her.

7. S.W. reported intermittent lower abdominal pain and intermittent dysuria. She denied vaginal and rectal pain. She denied neck pain. Upon examination, the records indicate a finding of "faint petechial bruising to anterior neck, posterior mid back and bruising to R wrist." The records state: "No indication for advanced imaging at this time."

8. M.J. was also at the Fort Defiance hospital and told the officer that S.W. had texted her that morning. M.J. stated that the text message stated: "Hey auntie I have something to tell you – Last night I got pretty cross faded with ur husband and we was just chilling until he started touching me. Aunt aunt I tried but that mf too strong asf. I know you might not want to hear this but I just want to let you know." M.J. told the officer that the night prior, S.W. had asked to spend the night and she agreed. That evening, she left her home to look for JOHNSON. She arrived back at the house at around 2:30 a.m. and saw JOHNSON sleeping on the couch. At approximately 8:47 a.m., she received a Facebook message from S.W. about the assault. She confronted JOHNSON. JOHNSON told her that he did not remember anything. He denied having sex with S.W.

9. M.J. stated that she had been married to JOHNSON for two years and provided a date of birth for him, indicating that he is twenty-seven years old. JOHNSON is a member of the Navajo Nation Indian Tribe. Their house, where the assault occurred, is located at 2 S. Route 112, 2 Miles South of the Chapter House, Fort Defiance, Arizona, 86504, which is within the exterior boundaries of the Navajo Nation Indian Reservation.

10. S.W. was later transported Chinle Comprehensive Healthcare Facility for a

Sexual Assault Medical Examination ("SANE"), which was conducted by a physician's assistant ("PA") on November 17, 2023 at approximately 9:17 p.m. The following details a summary of the statement S.W. provided to the PA during the exam:

> S.W. lives in Crystal, New Mexico with her grandmother. She was with her friend in Fort Defiance and was dropped off at her aunt's house to spend the night. Her Auntie was not home at that time. At around midnight, JOHNSON came home and got close to her on the couch. He told her that she looked pretty and asked to kiss her. He started nibbling on her shoulder. He came closer to her neck and tried to kiss her. She kept pushing him away. He continued to try and kiss her neck and left hickeys. He picked her up and tried to take her to the bedroom. She struggled to get away, but he was always in the way. She knew that he worked out and that he was previously in the military. He picked her up again and took her to the bedroom. He set her on the bed. They were both struggling. He put his full body on her. He took off her pants and shorts. She told him to stop and that she did not want to do this. He told her: "I just want to do it this one time." He told her that he would hit her if she did not let him. She did not like getting hit, so she let him take over. He took off her shorts and panties. At this point, they were both on the floor. He lifted her legs and started licking her vagina and rectal area for approximately 5-10 minutes. He then penetrated her. He tried to put "it" in her rectum first, but could not, so he put "it" in her vagina. He kept thrusting and then put "it" in her rectum. He kept going back and forth for approximately 10 minutes. She started hurting more and put her hands on his stomach for him stop. She pushed him away. He hit her leg and choked her again. He had a belt and stated that he would use it. She told him that it hurt too much. He put his penis back into her vagina. She told him that she needed to pee and yelled at him. He got up, grabbed the belt, and told her to go to the bathroom. He then started banging on the bathroom door. She went back to the couch. He had the belt and asked why she did not go back to the bedroom. He told her to go back there.
>
> She later told her friend what happened that morning and the friend told her to report it. She told her aunt, and her aunt told her grandmother, who took her to the emergency room. She was on the last day of her period and had her tampon in. She does not know if he pulled it out or not. She did not have any bleeding that day.

11.     When asked if any physical force, verbal threats, or intimidation occurred, S.W. stated: "Yes." The PA notated: "hitting, choking, threatening with belt." When asked

5

if there were any physical blows, S.W. stated: "Yes." The PA notated: "choked, held down, hit leg." When asked if there was physical restraint, S.W. stated: "Yes." The PA notated: "held neck, picked up." S.W. told the PA that she was choked or strangled three times.

12. During the physical exam, the PA noted that there was a tampon in S.W.'s cervix that was removed with forceps. The PA notated: "vaginal exam showed retained tampon and string adherent to the cervix – not visible on external exam. Removed with [illegible word] forceps – discharge visible on tampon." After speaking with the PA about this exam, it is my understanding that the discharge was likely semen.

13. In the examiner's diagnosis, the PA wrote: "Sexual and physical assault with attempted strangulation – multiple areas of ecchymosis and contusions on neck – L posterior shoulder/blade/right knee." In the examination report, the PA noted that there was petechiae/purpura on the right neck with three linear lesions that were approximately 1 centimeter each. The PA noted ecchymoses on S.W.'s upper back, left shoulder posterior linear that was approximately 1-2 centimeters. She noted ecchymoses on S.W.'s mid posterior back that was approximately 12 centimeters. She noted ecchymoses and a contusion on S.W.'s right thigh that was approximately 3 centimeters by 1 centimeter.

14. On November 18, 2023, a Criminal Investigator with the Navajo Police Department (NPD) contacted the FBI regarding the above-described investigation.

15. On November 21, 2023, the FBI interviewed JOHNSON. During his interview, JOHNSON stated that he recalls driving with S.W. He recalled that they smoked weed and drank alcohol together. He stated that they were sitting on the couch at his house and watching a movie. However, he stated that he does not recall what happened after that.

He did not deny sexually assaulting or physically abusing S.W. But, he stated that because of the alcohol and drugs, he did not recall anything that occurred after sitting on the couch with S.W.

16. On November 21, 2023, the FBI interviewed M.J. two times. During her interviews, M.J. stated that she was in possession of firearms that belonged to JOHNSON. She stated that earlier that afternoon, JOHNSON called her and asked for his guns back. M.J. stated that she tried to convince him to let her hold onto his guns because she was concerned for his safety. When M.J. would not give his guns back, JOHNSON called her and told her that he was going to her house.

17. M.J. stated that at approximately 9:00 p.m. that same evening, M.J. heard loud banging on the outside of her trailer. When she went outside, she saw that JOHNSON was standing at the front door. JOHNSON told her: "I want my fucking guns." M.J. stated that she made an agreement with him that if she gave him his firearms he had to leave. M.J. then gave him his 12-gauge shotgun and his .22 caliber rifle.

18. After receiving his firearms, JOHNSON began threatening M.J. and her family. He told her: "I'm going to burn your fucking house down." M.J. began to walk JOHNSON back towards his car in order to get him away from her residence. Her children were inside and she wanted to get JOHNSON away from the them. When she got to his car, M.J. asked him to leave but JOHNSON stated: "Get in the fucking car before I burn this house down and everybody in it." M.J. indicated that she believed that JOHNSON would kill or injure her and her children if she did not follow his commands. Therefore, M.J. stated that she got in the car with JOHNSON, and he drove them to Sawmill, Arizona.

During the drive, JOHNSON continued to tell M.J. that he was going to kill her.

19. Once in Sawmill, Arizona, JOHNSON stopped the car several times in extremely remote areas. Each time JOHNSON stopped the car, he got out, loaded the shotgun, and fired several rounds into the air. He also locked the doors to prevent M.J. from leaving.

20. The last time JOHNSON stopped the car, he told M.J. to get out of the car, which she did. He then locked the doors to prevent her from getting back in. JOHNSON pointed the shotgun at her. M.J. stated that she attempted to wrestle the gun away from him but was unsuccessful. She stated that JOHNSON then told her to walk into the woods and get on her knees so that he could shoot her. M.J. stated that she pleaded with JOHNSON not to kill her. M.J. stated that she began walking into the woods and that when JOHNSON was out of view, she started running. She continued running until she saw a truck coming down a nearby road. She considered flagging the truck down, but saw that it was driving erratically, so she ran back into the woods.

21. M.J. stated that JOHNSON then drove back up the road yelling her name. She stated that JOHNSON's tone had changed and that he was now acting concerned for her safety. M.J. noted that it was approximately 20 degrees outside and that she was not wearing winter clothing. She also noted that it was dark and that she did not have her cellphone. Therefore, she stated that she got back into the car with JOHNSON. M.J. stated that she continued to plead for her life and for the lives of her children. Despite her pleas, M.J. stated that once she was back in the car with JOHNSON, he began telling her that he was going to kill her and everyone at the house.

22. As they approached Fort Defiance, Arizona in the vehicle, a NPD patrol car passed them. JOHNSON then told M.J. to get into the driver's seat and drive, which she did. After M.J. began driving, the vehicle became stuck in mud. Shortly thereafter, multiple NPD officers arrived. Upon seeing the officers, JOHNSON grabbed his firearms and threw them away from the road—which were ultimately recovered by the NPD. JOHNSON was then taken into custody by NPD.

## CONCLUSION

23. Based on the foregoing, I have reason to believe that probable cause exists that CODY OSCAR JOHNSON committed the offenses of Aggravated Sexual Abuse and Kidnapping in violation of Title 18, United States Code, Sections 1152, 1153, 2241(a)(1) and 2246(2).

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

_____        11/22/2023
Loren Moneypenny                          Date
Special Agent, FBI

SWORN BY TELEPHONE.

Subscribed and sworn to before me this 22nd day of November 2023.

**Camille D Bibles**
Digitally signed by Camille D Bibles
Date: 2023.11.22 19:44:53 -07'00'

_____        _____
Honorable Camille D. Bibles               Date
United States Magistrate Judge

9